Merrimack,
Dec. 12, 1935.

BELLE H. CLOUGH *v.* ELMER B. OSGOOD *& a.*

*Robert J. Kelliher,* for the plaintiff.

*Willoughby A. Colby,* for the defendants.

PAGE, J.   The Penacook school district, composed of a portion of the territory and inhabitants of the city of Concord and of two homesteads in Canterbury, was created by act of the legislature in 1907. Laws 1907, c. 290.   Two years later the legislature created the Penacook Union school district, composed of the territories and inhabitants of the Penacook School district and the Boscawen Special school district.   By the terms of the act, the two constituent districts were abolished except for the mere purpose of liquidating their respective debts.   Laws 1909, c. 239.

When this act became effective, there was a town district in Concord, but by an act of the legislature eight years later the town district was annexed to the Union school district of Concord.   Laws 1917, c. 347.   This act provided that all the property of the town district should become the property of the union district, that the latter should assume all the debts and obligations of the former, and that the latter should be the custodian of the former's records.   The town district was not abolished in so many words, but the provisions of the act left no necessity whatever for the continuance of its corporate entity.   Therefore there was evidence of legislative intent to effect its dissolution.   It does not appear that the town district had any organization or transacted any business after 1917.   In any event, the proceedings leading to this bill in equity were apparently based upon the theory that the town district had no existence in the early part of 1935.   From 1917 to 1935 the people within the territorial limits of the city of Concord were served by only two districts, both of which were special districts—by the Union school district in all the territory except the Penacook area, and by the Penacook Union school district in that area.

There was introduced in the senate of 1935 bill No. 42, entitled "An Act Relative to Penacook Union school district."   Section 1 of this bill provided that the territory embraced within the former Boscawen Special school district might be "withdrawn" from the Penacook Union school district and "united with the town district of Boscawen." This section, in terms providing for a withdrawal and no more, was nevertheless entitled "Dissolution of District."

Section 2 provided machinery for the calling and holding of a meeting of the residents of the former Boscawen Special school district entitled to vote in school matters.   Section 3 provided that if the said residents should vote "to withdraw from said union district the

procedure for this dissolution of said union district and union with the town district shall be as provided in chapter 119 of the Public Laws, sections 44 to 50, inclusive."

This bill, after amendments were made, was enacted as Laws 1935, c. 313. Sections 1 and 3 of the bill suffered no material change before enactment other than the omission of the provision that the Boscawen territory, if withdrawn, should become a part of the Town district of Boscawen. In section 2 two changes were made: (1) the number of Boscawen residents upon whose petition a meeting should be called to act upon the question of withdrawal was increased from three to twenty-five; and (2) it was provided that no valid action could be taken at the meeting unless a majority of the residents entitled to vote in that territory were present and a record of that fact made. Before enactment, a new section was inserted providing that the territory within Concord might be "withdrawn from said union district with the same procedure and in the same manner as hereinbefore set forth for the withdrawal of the Boscawen Special School District." The inhabitants of Concord within the Penacook Union school district did not act under the provisions of this section. Under the provisions of the act the residents of the Boscawen territory met on July 27, 1935, and voted to withdraw from the Penacook Union school district. All parties to this proceeding appear to agree that the meeting was legally called and held, and no question is raised as to the validity of the withdrawal.

Upon the belief that the withdrawal resulted in the dissolution of the corporate entity of the Penacook Union school district, twelve residents and legal voters of Concord within its limits petitioned a justice of the peace to call a meeting to organize the Town school district of Concord. The meeting was called and was held on September 14, 1935; officers were chosen, the defendants were elected members of the school board, appropriations were made for the support of schools, and other business was transacted. At a later meeting of the "Town District" on October 17, 1935, it was voted to authorize the issuance of bonds to raise money for the construction and equipment of a new high school building, a building committee was chosen, and other action taken appropriate to the purpose of erecting and equipping the building.

The validity of these votes depends upon the legal existence of the "Town District." If, as urged by the plaintiff, the Penacook Union school district has not been dissolved as a corporation by virtue of the withdrawal of the Boscawen territory under the provision of the

act of 1935, the new "Town District" is legally non-existent, and all of its votes and doings are void. The question is whether it was the intent of the legislature to effect the dissolution of the corporation known as the Penacook Union school district, as distinguished from a mere taking away of a part of the territory in which it was authorized to administer the affairs of the schools.

The defendants lean heavily upon the statutes setting up the typical school district organization. For fifty years that typical organization has consisted of a single district in each town. Yet the legislature has continued to recognize the integrity of districts organized, like the Penacook Union school district, under special acts. Laws 1885, *c.* 43, *s.* 1; P. L., *c.* 119, *s.* 1. Every legally organized school district is a corporation. P. L., *c.* 119, *s.* 2; *Union School District* v. *District No. 20*, 71 N. H. 269.

School districts, like counties and towns, are political sub-divisions of the state made for the convenient administration of the government. *Opinion of the Justices*, 78 N. H. 617, 620. Like towns, they are municipal corporations. *School District* v. *Blaisdell*, 6 N. H. 197, 199. Every municipal corporation has two characteristics, at least, common to every other. First, each has a definite territory, assigned by special or general legislative act, which is its field for administrative action. Second, in order that administrative action may be more convenient, each is given a corporate entity.

It is possible that an act of the legislature assigning the whole administrative territory of one district to another, without language importing an intention to abolish the former district, should be construed to dissolve the corporate entity of the former, except for the purpose of winding up its affairs. But however this may be, a contrary construction is indicated if the act transfers only a part of the administrative territory, for the district would still be in need of its corporate entity to perform its administrative duties in its reduced territory. Otherwise in such a case the needs of the remaining territory, if met at all, could be met only with increased inconvenience and perhaps with confusion. Unless the legislative intent to abolish the corporation appears, the ordinary construction of such an act would seem necessarily to be that a district losing a part of its territory will nevertheless be intended to continue its corporate existence in its narrowed field of operation.

Municipal corporations are created for purely public purposes. Consequently they may be altered, modified, or divided as the legislature deems that public convenience or necessity requires. *Bristol*

v. *New Chester*, 3 N. H. 524, 532. That case recognized the common exercise of such legislative power during the history of province and state, and the law and practice since then have remained substantially unchanged.

The effect of the withdrawal of a portion of the administrative territory seems never to have been doubtful. The case of the town of Nottingham is in point. That town was incorporated in 1722 with powers of administration over a territory extending from the Dover line thirteen miles "into the Countrey." When it became apparent that in so vast a territory there could be no convenient worship or schooling for the southwesterly portion of the town, the inhabitants of that part repeatedly prayed to be set off as a parish with the necessary corporate powers to enable them to exercise jurisdiction in their own territory. Finally, in 1766, the new parish of Deerfield was incorporated. Similarly, the northwesterly part of Nottingham was set off as Northwood in 1773. 9 State Papers, 630-639; 25 State Papers, 402; 3 Laws N. H. 379, 591. Legislative authority for the division of the original territory into three towns, granted upon the petition of the inhabitants who withdrew, and with the consent of the non-withdrawing inhabitants, did not result in the dissolution of the corporation known as the Town of Nottingham, which retained its corporate powers and has ever since exercised them in full in that territory which now remains under its jurisdiction. Similar examples might be cited in great volume. A municipal corporation that loses administrative jurisdiction over a portion of its territory will retain its corporate entity and exercise its administrative functions in the remaining territory unless the legislature expressly or by clear implication provides for the abolition of the corporation or its dissolution in the legal sense, rather than a mere division of territorial jurisdiction and property.

The act of 1935 is not wholly clear in this respect. The best that can be said in favor of the defendants is that the act is ambiguous. When the Penacook Union school district was created, the legislature made the intent perfectly clear by providing that the constituent districts should be abolished. Laws 1909, *c.* 239. The act of 1935 does not speak of abolition, and it mentions dissolution in a connection that makes the construction a reasonable one that division of jurisdiction and property is contemplated, rather than dissolution of the corporate entity.

Twice the act uses the word "dissolution." First: the title of section 1 is "Dissolution of District," but the section itself, instead of

providing for the dissolution of the district in the corporate sense, provides in terms only that the Boscawen territory may be "withdrawn from said union district." If suitable emphasis be given to the word "withdrawn," it seems clear that the word "dissolution" was used in the sense of division, or perhaps more precisely subtraction. The Standard Dictionary defines dissolution in its first and general sense as "The act or process of disuniting or separating into parts." As used in the title of section 1, it is clear from the context that the word is to be understood in this general sense and not in the special sense of the destruction of the corporate entity.

Section 2 uses the word "withdrawing" and gives no hint that, in case of the withdrawal of the Boscawen territory, the remaining territory is to be left a nonentity floating in a vacuum. But the defendants rely particularly on section 3, which provides that if the residents of Boscawen "vote in the affirmative to withdraw from said union district the procedure for this dissolution of said union district shall be as provided in chapter 119 of the Public Laws, sections 44 to 50, inclusive."

It is true that the sections last mentioned furnish machinery for the apportionment of the assets and liabilities of a dissolved district formerly organized from parts of two towns. But the borrowing of such machinery for the division of property upon a withdrawal is perfectly consistent with a legislative intent to leave the union district competent to exercise corporate powers in the reduced territory. We think that the legislature had in mind no more than a division of territory by subtraction, and a consequent division of assets and liabilities.

Thus construed, the act left the Penacook Union school district, after the withdrawal of the Boscawen territory, in full corporate vigor to administer the schools in the old Penacook district, including the two homesteads in Canterbury. One of the results of the withdrawal was that no resident of Boscawen was eligible to hold office in the Penacook Union school district. P. L., c. 120, s. 15. Any office thus vacated could, however, be promptly and seasonably filled, so that the Penacook Union school district could conduct its affairs without serious interruption or inconvenience. P. L., c. 120, s. 24.

It follows that the so-called Town district of Concord is nonexistent as a corporate entity, and that no money may be borrowed, buildings erected, or schools conducted on any assumption of its existence. The demurrer is overruled. The Penacook Union school

district, as an existing municipal corporation, has suffered no change of authority and duty to administer school affairs, except in respect to Boscawen territory. Upon the record, no question relating to district action taken prior to the withdrawal of that territory is presented for consideration, nor are there involved any issues arising from the actual control and management of school affairs by others than those entitled.

*Decree for the plaintiff.*

All concurred.